**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JAMES GALAMBOS, | |
| **Plaintiff,** | |
| v. | **Case No. 26-cv-554-NJR** |
| ANTHONY WILLS, MS. PHILLIPS, C/O HERNS, KENNETH HALL, C/O CHOATE, C/O FARRAR, MHP SALGER, C/O BAKER, ANTHONY JONES, C/O BENT, C/O FALASTER, C/O KOENENBERG, C/O HART, LT. BENNETT, JOHN DOE #1, MAJOR MCCLANAHAN, MAJOR DEMOND, and JOHN DOE #'s 2-9, | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff James Galambos, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pontiac Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while he was at Menard Correctional Center. In the Complaint, Galambos alleges that he was denied access to out-of-cell activity while in restrictive housing in violation of the Eighth Amendment.[1]

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen

---

[1] Although Galambos has recently filed a supplement to his Complaint (Doc. 10), the Court does not accept piecemeal amendments to a Complaint. Further, his supplement appears to be discovery materials, which are not required to be filed with the pleading.

1

prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

### The Complaint

Galambos was housed in Menard's North 2 restrictive housing from March 18, 2024, until December 18, 2024 (Doc. 1, p. 10). During that time, he was housed in cell 827 and then 107. Galambos alleges that he was denied access to the yard and sick call appointments for his entire stay in restrictive housing (*Id.*). He was eventually moved to protective housing but was then placed back in restrictive housing from January 14, 2025, until June 5, 2025, in cell 430 (*Id.*).

Galambos alleges that he was afforded no out-of-cell exercise opportunities during his entire stay in restrictive housing (Doc. 1, p. 100). The lack of out-of-cell opportunities weighed on him physically, mentally, and emotionally (*Id.*). He filed numerous grievances that were ignored. He believes that some of them were stolen by staff (*Id.*). He filed multiple emergency grievances directed to Chief Administrative Officer Anthony Wills (*Id.*).

Galambos alleges that he spoke to numerous mental health professionals who stopped by his cell. He told them that the lack of access to the yard was "driving [him] crazy." (Doc. 1, p. 11). He spoke to Mental Health Professional ("MHP") Phillips, MHP Salger, and other providers (*Id.*). He also spoke to every correctional officer about his medical needs, including C/O Heins, C/O Kenneth Hall, C/O Choate, C/O Farrar,

2

C/O Baker, Sergeant Anthony Jones, C/O Bent, Lieutenant Bennett, C/O Hart, C/O Falaster, C/O Koenenberg, and numerous other officers (*Id*. at p. 11). He explained his medical condition and how the lack of access to the yard was hurting him (*Id*.). Galambos fails to indicate the nature of his condition, although he says he told one officer the lack of yard hurt his back (*Id*. at p. 3). The officers all responded that the prison was short-staffed and running the yard without proper staffing would threaten the safety and security of the prison (*Id*. at p. 11). Galambos was told by the Administrator that the unit was on Level 3 lockdown due to critically low staff levels, but Galambos contends that the prison was only officially on Level 3 lockdown for 36 days and Level 1 lockdown for nine days (*Id*. at pp. 11-12). He alleges that there was no explanation to justify the extended denial of out-of-cell activities and medical care (*Id*. at p. 12).

As to the correctional officers, Galambos alleges that he stopped C/O Heins at every opportunity to tell him he needed access to the yard (Doc. 1, p. 2). He told C/O Hall every time he saw him that he needed access to the yard and that the lack of access hurt his back (*Id*. at p. 3). Galambos stated that he stopped C/O Choate and explained his need for yard access, but Choate stated that the prison was short-staffed (*Id*.). Galambos spoke to C/O Farrar numerous times to complain about not being able to access the yard or being seen for sick call (*Id*.). Farrar noted that he was just a gallery officer and had no control over staffing or medical (*Id*.). Galambos alleged he stopped C/O Baker every opportunity he saw him to complain about yard access, but Baker just laughed and said "there ain't no yard at Menard." (*Id*. at p. 4).

3

Galambos notes that he stopped Sergeant Anthony Jones on one occasion while on a tele-psych pass and asked why he had not been able to go to yard for over a year (*Id.*). Jones noted that the prison was short-staffed and lacked the officers to run the yard (*Id.*). Galambos indicated that his sick call requests were being ignored, and Jones told him to file another request (*Id.*). Galambos spoke to C/O Bent about his access to yard, and Bent cursed at him and threatened to spray him with mace (*Id.*). Galambos had multiple conversations with C/O Falaster; he was sympathetic to Galambos's concerns but said the decision to run the yard was above his pay grade (*Id.* at p. 5). C/O Koenenberg also seemed sympathetic to Galambos's plight but noted that the shortages in staff made running the yard a threat to the safety and security of the prison (*Id.*). Galambos alleges that C/O Hart was not sympathetic, noting that he did not care about his concerns. Hart often argued and threatened inmates when they spoke to him about their lack of access to the yard (*Id.*). Galambos spoke to Lieutenant Bennett when he would stop by his cell to verify Galambos's money vouchers (*Id.* at p. 6). Although Galambos inquired about access to sick call and the yard, Bennett responded that it was due to the prison being short-staffed (*Id.*). John Doe #1 also seemed sympathetic to Galambos's concerns but noted that the prison was extremely short-staffed (*Id.* at p. 6). John Doe #1 noted that North 2 only had 11 officers present during a shift when they needed 50 officers (*Id.*).

Galambos spoke to Major McClanahan on a single occasion during a tour of the cellhouse by IDOC Director Latoya Hughes (Doc. 1, p. 7). Galambos notes there were riots and fires in response to the director's presence (*Id.*). McClanahan stopped and spoke to Galambos, encouraging him to calm down and explain why he was so angry (*Id.*).

4

Galambos noted that he lacked access to the yard, and he believed he was being denied his sick call requests in retaliation for an encounter he had with Nurse Emma Hathaway (*Id.*). McClanahan noted that the prison was short-staffed (*Id.*). Galambos alleges that he wrote a letter to Major Demond about his claims but never received a response (*Id.*).

Galambos alleges that he also spoke with mental health professionals including Ms. Phillips and Salger. He spoke to Ms. Phillips on a weekly basis and informed her that the lack of access to the yard was negatively affecting him (Doc. 1, p. 2). He asked MHP Salger to note in his records that the issues with yard were driving him crazy (*Id.* at p. 3).

### Preliminary Dismissals

Galambos identifies John Doe #'s 2-9 in his case caption but fails to include any allegations against them in his statement of claim. He fails to indicate who these individuals are (whether they are mental health providers or correctional officers), and he fails to indicate how each violated his rights. Thus, any potential claim against John Doe #'s 2-9 are **DISMISSED without prejudice**.

Galambos also alleges that officials were deliberately indifferent to his serious medical and mental health needs when they failed to let him out of his cell for sick call requests. To successfully state an Eighth Amendment claim of deliberate indifference to medical needs, a plaintiff must plead that he suffered from "an objectively serious medical condition" and that a "state official was deliberately… indifferent" to that condition. *See Giles v. Godinez*, 914 F. 3d 1040, 1049 (7th Cir. 2019). A plaintiff must demonstrate that the defendants' actions were more than negligent, something

5

approaching intentional wrongdoing or recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). Further, a plaintiff must demonstrate that each defendant had knowledge of his condition and was personally involved in his care. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009).

Galambos fails to allege that he was suffering from an objectively serious medical condition. In fact, he fails to identify the medical condition for which he sought care. He allegedly told C/O Hall that the lack of exercise was "hurting [his] back," but it is not clear as to whether Galambos suffered from a back injury or some other condition that required care. He also fails to allege when he submitted sick call requests or what care he sought for his condition. Similarly, Galambos fails to provide any factual allegations regarding his mental health; he merely states that the lack of yard was driving him crazy or killing him. But the limited allegations fail to adequately allege that he was suffering from a serious medical condition.

Moreover, Galambos fails to allege that any defendant acted with deliberate indifference to his needs. He merely alleges that he asked the mental health providers to document his concerns, but he fails to allege how either of the providers responded to his concerns. The limited allegations do not rise to the level of deliberate indifference.

Galambos also fails to state a claim against some of the staff whom he spoke to regarding his access to out-of-cell activities. Some staff he only spoke to on one occasion. Although he spoke to some officials on multiple occasions, he fails to indicate how they responded to his concerns. For instance, he alleges that he stopped C/O Heins every time he saw him about his ability to access the yard but merely states that his concerns did not

6

receive a response (Doc. 1, p. 2). He also indicates that he informed C/O Hall, Ms. Phillips, and MHP Salger, but he fails to indicate how they responded to his concerns. He states that he wrote a letter to Major Demond, but there are no allegations to suggest that Demond received the letter or was aware of his complaints (*Id*. at p. 7). Galambos also notes that many officers were sympathetic to his concerns but noted that they had no control over the situation, that decisions regarding access to the yard were above their pay grade, or that the prison was short-staffed. There are no allegations to suggest that these officials, including C/O Choate, C/O Farrar, Sergeant Jones, C/O Falaster, C/O Koenenberg, Lieutenant Bennett, John Doe #1, and Major McClanahan, acted with deliberate indifference to Galambos's conditions.

### Discussion

Based on the allegations in the Complaint, the Court designates the following count:

> **Count 1:** **Eighth Amendment conditions of confinement claim against Anthony Wills, C/O Baker, C/O Bent, and C/O Hart for restricting Galambos's access to the yard while in North 2 restrictive housing.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered**

**dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[2]

To state an Eighth Amendment conditions of confinement claim, an inmate must allege that prison officials denied him the "minimal civilized measure of life's necessities" and that they were deliberately indifferent for imposing such a condition. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Lack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmate's health is threatened." *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996). "[T]here is a significant difference between a lack of outdoor recreation and an inability to exercise." *Smith v. Dart*, 803 F.3d 304, 313 (7th Cir. 2015). An inmate may have an Eighth Amendment claim when he is entirely barred from recreation or provided with little opportunity for movement. *See Antonelli*, 81 F.3d at 1432 (inmate stated a claim when he was denied recreation for seven weeks and often limited to one hour out of his cell every two weeks); *Turley v. Rednour*, 729 F.3d 645, 652 (7th Cir. 2013) (frequent lockdowns of substantial periods of time which denied plaintiff all access to recreational opportunities stated a claim); *Delaney v. DeTella*, 256 F.3d 679, 684-85 (7th Cir. 2001) (denial of all exercise opportunities for six months could amount to an Eighth Amendment violation).

Here, Galambos alleges that he was denied all out-of-cell activities for over a year (although he notes that he was in restrictive housing initially for nine months and then

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

another four months). He alleges that he spoke to C/O Baker, C/O Bent, and C/O Hart about his conditions and they responded with threats or disdain. C/O Baker laughed at him and responded that Menard did not offer yard (Doc. 1, p. 4). C/O Bent threatened him with mace, and C/O Hart also threatened him and said he did not care about Galambos's conditions (*Id.* at pp. 4-5). Their responses on multiple occasions could suggest deliberate indifference to Galambos's conditions.

As to Warden Wills, Galambos alleges that he wrote emergency grievances to the warden about his conditions. Numerous officers indicated that the decision to keep inmates in their cells were made by officials above their pay grade, and Galambos alleges that the administrator responded to his concerns by claiming the prison was on lockdown due to staff shortages. Galambos contends this claim was a lie because the official lockdown lasted only 36 days (Doc. 1, p. 11). The lockdowns lasted for months, numerous inmates complained, and, at one point, the inmates rioted and set fires to protest their conditions. Based on these allegations, Wills could be liable for the pervasive conditions. *See Sinn v. Lemmon*, 911 F.3d 412, 423 (7th Cir. 2018). Thus, at this stage, Galambos states a viable claim against C/O Baker, C/O Bent, C/O Hart, and Anthony Wills.

As part of his request for relief, Galambos sought "injunctive relief to fix the conditions." (Doc. 1, p. 13). But Galambos is no longer housed at Menard; he transferred to Pontiac Correctional Center before he filed this lawsuit (*Id.* at p. 1). His transfer causes his request for injunctive relief to be moot. *See Easterling v. Pollard,* 528 F. App'x 653, 656 (7th Cir. 2013). Thus, any claim for injunctive relief is **DISMISSED without prejudice**.

**Motion for Counsel**

Galambos's motion for recruitment of counsel (Doc. 9) notes that he has written numerous law firms, but the law firms failed to respond. He notes that he has some high school education, but he was in special education classes and is not experienced in legal matters. He also suffers from depression and anxiety. But given the early stage of the litigation process, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[3] Further, there is nothing currently pending that would require counsel. Once Defendants have been served and file their answers, the Court will enter a scheduling order setting forth the next steps in the litigation process. If Galambos experiences difficulties in litigating the case at that point, he may submit another request for counsel. At this time, his motion is **DENIED without prejudice**.

**Disposition**

For the reasons stated above, Count 1 shall proceed against C/O Baker, C/O Bent, C/O Hart, and Anthony Wills. Any other potential claim and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for C/O Baker, C/O Bent, C/O Hart, and Anthony Wills: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a

---

[3] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Galambos. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Galambos, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Galambos, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

11

Finally, Galambos is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED:  August 13, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**